UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
MAUREEN ELTZHOLTZ,                                          No. _____

                    Plaintiff,

       -against-                                             **COMPLAINT**

CORNWALL CENTRAL SCHOOL DISTRICT,                           **JURY TRIAL**
                                                            **DEMANDED**
                    Defendant,

----------------------------------------------------------------------x

By and through her undersigned counsel, plaintiff MAUREEN ELTZHOLTZ, as and for her Complaint against Defendant CORNWALL CENTRAL SCHOOL DISTRICT, hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and the New York State Human Rights Law, N.Y. Exec. L. § 290, *et seq.* ("NYSHRL"), and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Title IX of the of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), and the NYSHRL.

## PARTIES

2. Plaintiff Maureen Eltzhotlz is of legal age and resides in Bergan County, New Jersey.

3. Defendant Cornwall Central School District (the "School District") is an education corporation organized and existing pursuant to the laws of the State of New York and which has its principal place of business located at 24 Idlewild Avenue, Cornwall-on-Hudson, New York, which is within this judicial district.

1

**JURISDICTION, VENUE & CONDITIONS PRECEDENT**

4. As this action seeks to redress violations of Plaintiff's federal statutory rights, specifically rights secured under the ADEA, Title VII and Title IX, this Honorable Court has subject matter jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1331, 29 U.S.C. § 626(c), and 42 U.S.C. § 2000e-5(f).

5. Plaintiff's state law claims arise from a common nucleus of facts as her federal claims and, thus, are so related to her federal claims that they form part of the same case or controversy and, therefore, this Honorable Court has supplemental subject matter jurisdiction over such state claims pursuant to 28 U.S.C. § 1367(a).

6. The events giving rise to the claims asserted herein occurred in Orange County, New York, which is within this judicial district; therefore, venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b)(2).

7. On October 30, 2025, Plaintiff filed her Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

8. On April 27, 2026, the EEOC issued Plaintiff a Right to Sue Letter.

9. On September 24, 2025, Plaintiff served her Notice of Claim upon the Defendant School District in compliance with Sections 3813 of the New York Education Law and Sections 50-e and 50-i of the New York General Municipal Law ("GML").

10. On January 23, 2026, Plaintiff gave testimony under oath at an examination conducted by counsel for the Defendant School District in compliance with GML § 50-h.

11. More than thirty days have elapsed since Plaintiff served her notice of claim, and the Defendant School District has failed or refused to make adjustment of her claims.

**FACTUAL ALLEGATIONS**

12. Plaintiff is 58 years old and has worked as a teacher in the Defendant Cornwall Central School District ("Defendant" or "School District") for 35 years.

13. For 25 of those years, Plaintiff coached girls' soccer at the high school level – about 16 years as head JV coach, about 2 years as assistant varsity coach and, most recently, 7 years as head varsity coach (from 2018-2024).

14. In or about 2021, Defendant hired Jason Semo as its Athletic Director ("AD").

15. As AD, and prior to the events described herein, Semo was always complimentary of Plaintiff's performance as head varsity coach, and he never raised any issues suggesting that her coaching job was in jeopardy.

16. On or about February 28, 2025, Plaintiff spoke with Semo, and he asked about her thoughts for the Fall 2025 season.

17. Plaintiff told him she was not planning on retiring for a few more years, and so she planned to continue coaching as long she remained teaching, particularly as she had an excellent experience with her new assistant coach, James Wiley, who coached with her the prior season (Fall 2024).

18. In an abrupt tone, Semo responded, in sum and substance, "I thought this was your last year," though Plaintiff had never told Semo she planned for the Fall 2024 season to be her last.

19. Semo continued to explain that there was a "young" new teacher, who had played Division 1 soccer, who might be interested in the position.

20. When Plaintiff asked if this person had approached him or applied, Semo responded, in sum and substance, "I have too much respect for you as a person and a coach to discuss your job with anyone else until I know if you are coming back."

3

21.  Indeed, under past custom and practice in this School District, unless there was some significant reason for replacing a coach or the coach expressed an intent to leave – neither of which was true here – the existing coach has typically continued from season to season.

22.  Upon information and belief, Semo's remark to Plaintiff denying he had spoken to the "young" new teacher about the coaching position was false because, in fact, he had emailed with this "young" new teacher about Plaintiff's coaching job in or about November 2024.

23. On March 5, 2025, Plaintiff emailed Semo, again confirming her intent to return as varsity head coach for the Fall 2025 season and requesting that Mr. Wiley return as her assistant.

24. The next day, Semo emailed, asking Plaintiff and Wiley to complete a "program review" about the soccer program, which is something that had never before been asked of her by Semo or any prior AD.

25. Plaintiff and Wiley met with Semo on March 25, 2025 and, soon after they finished listing numerous strengths of the program as part of the "program review," Semo interrupted in a hostile tone and began asking questions about team morale, referencing matters he had never before addressed with Plaintiff and making baseless accusations.

26. Despite Plaintiff's rational responses, assurances and calm demeanor, Semo maintained his hostile tone, remarking, in sum and substance, "These meetings usually head in a direction of resolution, but this one is not headed that way."

27. As his hostile tone and demeanor did not abate, Plaintiff remarked, "If you want to make a coaching change, then please just say it."

28. Semo responded curtly, "If I was going to say that, I would have already have said it!"

29. Despite Semo's hostile remarks and demeanor, Plaintiff left the meeting with the understanding that she would remain head coach, and she thanked Semo for keeping Wiley as her

4

assistant, as such continuity of coaching staff would be beneficial to the team and noting that the only way to get rid of her would be to get rid of Wiley.

30. Upon information and belief, on or about April 4, 2025, Semo met privately with Wiley and asked for his coaching preference.

31. Upon information and belief, Wiley responded that he preferred to continue as Plaintiff's assistant coach on the varsity girls' soccer team.

32. Upon information and belief, Semo then asked, in sum and substance, "Take Mo [referring to Plaintiff] out of the equation; would you prefer to coach girls or boys?"

33. Upon information and belief, Wiley, who did not yet have tenure and was trying not to make waves, responded, in sum and substance, that he did not really have a preference and just wanted to coach and, when pushed by Semo to choose between girls and boys, Wiley reluctantly responded he might prefer coaching the boys by a margin of 51% to 49%, despite his true preference to continue coaching the girls' team with Plaintiff.

34. Upon information and belief, Semo then responded, "I'm moving you to the boys, but don't tell Mo [again referring to Plaintiff]."

35. Semo spoke again with Plaintiff on April 7, 2025, at which time he notified her he had moved Wiley to the boys' program.

36. After Plaintiff expressed her disappointment with Semo's decision, Semo then told Plaintiff he felt he needed to go in a different direction with the coaching staff and was considering replacing her with a "young middle school teacher who played D1 soccer."

37. Though Semo had discretion to appoint a new coach, the incumbent retains the right to apply, and the AD must post the position and implement a process to consider all interested applicants.

38. Accordingly, to the extent Semo sought to unilaterally replace Plaintiff absent such a process, he deviated from procedural hiring norms in the School District.

39. After her April 7, 2025 meeting with Semo, Plaintiff filed an internal Title IX complaint with the School District, alleging Semo had treated her hostilely and sought to terminate her coaching position because of her gender, citing, *inter alia*, Semo's hostile and disrespectful tone and demeanor toward her during their February 28, 2025 and March 25, 2025 conversations and the lack of any legitimate performance-based reason for Semo's plan to replace her as head coach.

40. On or about May 7, 2025, the School District issued its determination on Plaintiff's Title IX complaint, concluding that, while Plaintiff had not established a violation of the School District's Title IX policy, Semo's actions in purporting to replace Plaintiff as head varsity coach were inconsistent with the School District's policies, which require an open application process, and directing that he engage in such a process.

41. Thereafter, Semo held interviews for the head varsity girls' soccer coach position, and Plaintiff, among others, applied.

42. On June 27, 2025, Semo notified Plaintiff he had chosen not to re-appoint her.

43. Instead, Semo appointed as head coach a teacher, who, upon information and belief, was 24 or 25 years old and had never coached soccer at the high school level, let alone as a head varsity coach.

44. Semo also appointed as assistant coach someone who, upon information and belief, was 27 years old and never coached at the varsity level.

45. Hiring as head coach of a high school varsity soccer team an individual with no prior high school soccer coaching experience is unheard of, and Plaintiff was far better qualified than the individual Semo hired to replace her.

46. By refusing to re-appoint Plaintiff as head varsity coach without any legitimate performance-based reason and, instead, replacing her with a preferred younger candidate, who was far less qualified, Defendant, by and through Semo's conduct, discriminated against Plaintiff on the basis of her age.

47. By refusing to re-appoint Plaintiff as head varsity coach without any legitimate performance-based reason and, instead, replacing her with a far less-qualified candidate because Plaintiff filed an internal Title IX complaint with the school district accusing him of gender bias, Defendant, by and through Semo's conduct, unlawfully retaliated against Plaintiff.

48. As a result, Plaintiff has lost the stipend of about $8,900.00/season, and she planned to coach for at least three more seasons.

49. Upon information and belief, this loss of wages will also negatively impact and diminish Plaintiff's pension benefit when she ultimately retires, as that benefit is calculated based upon, among other things, Plaintiff's wages, including her coaching stipend.

50. Plaintiff has also suffered severe emotional distress and mental anguish in the form of, *inter alia*, embarrassment, humiliation, anxiety, depression, as well as harm to her reputation, as colleagues throughout the region have learned of her termination as coach.

## CLAIMS FOR RELIEF

### COUNT I
### AGE DISCRIMINATION
### ADEA, 29 U.S.C § 621, *et seq.*

51. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "50" above.

52. The ADEA provides in pertinent part: "It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

53. At all relevant times, the Defendant School District was Plaintiff's employer and subject to the ADEA.

54. By dint of its conduct as alleged herein above, and in particular by refusing to re-appoint Plaintiff as the Girls Varsity Soccer head coach and, instead, replacing her with a much younger and significantly less-qualified candidate, in a manner that deviated from extant policy and past practices, customs, and norms, and unsupported by any legitimate reason, the Defendant School District discriminated against Plaintiff because of her age in violation of the ADA.

55. As a direct and proximate result, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including without limitation, lost income, lost benefits, and emotional distress and mental anguish.

**COUNT II**
**AGE DISCRIMINATION**
**NYSHRL, N.Y. Exec. L. § 290, *et seq.***

56. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "50" above.

57. The NYSHRL provides, in pertinent part: "It shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's age . . . to . . . discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. L. § 296(1)(a).

58. At all relevant times, the Defendant School District was Plaintiff's employer and subject to the NYSHRL.

59. By dint of its conduct as alleged herein above, and in particular by refusing to re-appoint Plaintiff as the Girls Varsity Soccer head coach and, instead, replacing her with a much younger and significantly less-qualified candidate, in a manner that deviated from extant policy and past practices, customs, and norms, and unsupported by any legitimate reason, the Defendant School District discriminated against Plaintiff because of her age in violation of the NYSHRL.

60. As a direct and proximate result, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including without limitation, lost income, lost benefits, and emotional distress and mental anguish.

## COUNT III
### RETALIATION
**Title VII, 42 U.S.C. § 2000e, *et seq.***

61. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "50" above.

62. Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

63. The Defendant School District employees more than 15 employees and, at all relevant times, was plaintiff's employer.

64. By dint of its conduct as alleged herein above, and in particular by refusing to re-appoint Plaintiff as the Girls Varsity Soccer head coach because she complained about gender discrimination, the Defendant School District unlawfully retaliated against Plaintiff in violation of Title VII.

65. As a direct and proximate result, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including without limitation, lost income, lost benefits, and emotional distress and mental anguish.

**COUNT IIV**
**RETALIATION**
**Title IX, 20 U.S.C. § 1681,** *et seq.*

66. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "50" above.

67. Title IX provides, in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

68. This prohibition also makes unlawful retaliation because of complaints of sex discrimination. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).

69. Upon information and belief, the Defendant School District receives federal financial assistance from the United States government and, thus, is subject to Title IX's antidiscrimination/anti-retaliation provisions.

70. By dint of its conduct as alleged herein above, and in particular by refusing to re-appoint Plaintiff as the Girls Varsity Soccer head coach because she complained about gender discrimination, the Defendant School District unlawfully retaliated against Plaintiff in violation of Title IX.

71. As a direct and proximate result, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including without limitation, lost income, lost benefits, and emotional distress and mental anguish.

**COUNT V**
**RETALIATION**
**NYSHRL, N.Y. Exec. L. § 290,** *et seq.*

72. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "50" above.

73. The NYSHRL provides, in pertinent part: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. L. § 296(7).

74. As Plaintiffs' employer, the Defendant School District is subject to the NYSHRL's anti-retaliation provision.

75. By dint of its conduct as alleged herein above, and in particular by refusing to re-appoint Plaintiff as the Girls Varsity Soccer head coach because she complained about gender discrimination, the Defendant School District unlawfully retaliated against Plaintiff in violation of the NYSHRL.

76. As a direct and proximate result, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including without limitation, lost income, lost benefits, and emotional distress and mental anguish.

**JURY DEMAND**

77. Plaintiff hereby demands a jury trial in this action.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully requests that this Court:

A. Accept jurisdiction over this action and all parties;

11

B. Empanel a jury to hear all claims;

C. Award to Plaintiff compensatory damages, including without limitation, backpay, lost benefits, incidental damages, and consequential damages, with pre- and post-judgment interest;

D. Order Defendant to install Plaintiff as the head Girls' Varsity Soccer coach or, alternatively, award to Plaintiff front pay in lieu thereof;

E. Award to Plaintiff all such equitable relief as is required to make her whole for the injuries sustained by dint of Defendant's unlawful actions as alleged herein;

F. Award to Plaintiff the reasonably incurred attorneys' fees and litigation costs associated with the prosecution of this matter; and

G. Award to Plaintiff such additional relief as the Court deems just, proper and equitable under the circumstances.

Dated: Newburgh, New York
      June 1, 2026

Respectfully Submitted,
GOLDMAN LAW, PLLC
*Attorneys for Plaintiff*

By:   */s/ Jonathan R. Goldman*
      Jonathan R. Goldman, Esq. (JG8710)
      372 South Plank Road, Ste. 2
      Newburgh, New York 12550
      (845) 534-6472 Ext. 1001
      (845) 579-3064 [Fax]
      jgoldman@jrgoldmanlaw.com